# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| KIMBERLY PHILLIPS, <br> TDCJ No. 466923, <br> Petitioner, | § <br> § <br> § <br> § | |
| v. | § | EP-18-CV-284-FM |
| | § | |
| LORIE DAVIS, Director, <br> Texas Department of Criminal Justice, <br> Correctional Institutions Division, <br> Respondent. | § <br> § <br> § <br> § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Kimberly Phillips, a state prisoner confined at the Clements Unit in Amarillo, Texas, challenges Respondent Lori Davis' custody of him through a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254. Before the court are Phillips' "Petition for a Writ of Habeas Corpus by a Person in State Custody" (ECF No. 1), filed September 27, 2018; Phillips' "Memorandum of Law in Support of 28 U.S.C. § 2254 Application for Writ of Habeas Corpus and request for Evidentiary Hearing" (ECF No. 2), filed September 27, 2018; Davis' "Answer with Brief in Support" (ECF No. 26), filed January 7, 2019; and Phillips' "Reply to Respondent's Answer with Brief in Support" (ECF No. 31), filed February 26, 2019. After considering the Petition, Memorandum, Response, Reply, and the applicable law, the Court will deny the Petition. The Court will additionally deny Phillips a certificate of appealability.

## BACKGROUND AND PROCEDURAL HISTORY

Phillips and Corby Louis Francis were charged with attempted capital murder for the July 26, 1986, shooting of David Parham.[1] Phillips and Francis were tried separately.

---

[1] *See Phillips v. State*, 770 S.W.2d 824, 825 (Tex. App.—El Paso 1988, no pet.) (summarizing the facts in this case).

Parham testified at Phillips' trial that, while he was driving along Transmountain Road, in El Paso, Texas, he stopped to help two men, later identified as Phillips and Francis, with an orange Buick Regal pulled over to the side of the road. Parham claimed that after he stopped, the two men robbed him. Parham further claimed that Phillips then shot him twice and Francis shot him a third time. Parham also described how Phillips and Francis pushed him down an embankment, shooting at him again as he slid away.

Officer Robert Coleman testified at Phillips' trial that early on the morning of July 26, 1986, he was called by Officer Martinez on the radio to check on two suspicious males and an orange Buick Regal parked on outside a Circle K store. Officer Coleman said he observed the vehicle pass him while he was driving toward the Circle K:

> A The orange vehicle was going at a slow rate of speed, there was a vehicle to it's [sic] right, directly behind it which illuminated the interior of the car as they were coming toward us.
> Q Did the car have tinted windows?
> A No it did not.
> Q Were you able to recognize the driver of that vehicle?
> A Yes, I was. My window of the patrol car was rolled down at the time.
> . . . .
> Q Is the individual that was driving that Buick Regal in the courtroom today?
> A Yes, he is.
> Q Where is he sitting?
> A He's sitting to ay right in the chair with a blue shirt on with a beard and hair in a ponytail, right there.
> . . . .
> MR. SHANNON: Now, Officer Coleman, what is — why were you able to identify — let me ask you this. Why were you able to now identify him?
> A Well, as the Regal came closer together, I was looking directly at the car first and I noticed the driver was the only person in the vehicle, at that time he passed us up I made eye contact with the driver of the vehicle and noted, I saw his face.
> Q Prior to this time, was there any description put out of this driver in any spot broadcast?
> A Well, Officer Martinez gave a description of two males, two white males with the vehicle, to check them out, however there was no spot broadcast was given out, just the one Officer Martinez gave us.

2

> Q As the vehicles passed each other, what did you do?
>
> A At that time, after looking at the subject, I proceeded northbound approximately 30 feet and made a U-turn to go check the vehicle. As I was making the U-turn, the vehicle made a sharp right turn on to a residential street and proceeded westbound on that street.
>
> Q Did he get away from you?
>
> A Yea he did.
>
> . . . .
>
> Q Now, when he eluded you, what did you do?
>
> A Right after he eluded us, we heard a spot broadcast go over the police radio about a crime that had occurred on Transmountain Road.
>
> Q What reaction did you have to that spot broadcast?
>
> A The spot broadcast gave a description of the vehicle that was taken from the scene of the crime and it clicked to my partner and I that that was the vehicle that we had seen and were actually chasing through the residential street.
>
> Q What did you do then?
>
> A The spot broadcast gave out that it had two males involved in the crime and I noted that there was only one person in the car that we had seen at the time. As we pulled up to the Circle K, prior to this incident there was one gentleman standing out in front of the Circle K store talking to the clerk. A white male.
>
> . . . .
>
> Q So you went back to the Circle K?
>
> A We went back to the Circle K store and checked the subject that was standing out in front of the Circle K store.
>
> Q And what did you do?
>
> A We identified ourselves as police officers and we had a routine pat down of the subject and it turned out he was holding in his possession a handgun in his back pocket.
>
> . . . .
>
> Q Did you eventually arrest this individual?
>
> A Yes, we did.
>
> Q What was his name?
>
> A I believe it was Corby Louis Francis.

State Habeas Court R. (Trial Tr., vol. III, pp. 111-15), pp. 14-18, ECF No. 21-1.

Phillips was found guilty by a jury on June 10, 1987. He pled true to an enhancement allegation, and the jury set his punishment at life in prison.

The Texas Eighth Court of Appeals affirmed Phillips' conviction on December 14, 1988. *Phillips v. State*, 770 S.W.2d 824 (Tex. App.—El Paso 1988, no pet.). Phillips did not file a petition for discretionary review.

3

Phillips filed his first state application for writ of habeas corpus challenging his conviction on April 29, 1988, which was denied without written order on August 31, 1988. Mandamus Supp. (WR-18,882-01), ECF No. 12-10. Phillips filed another state application for writ of habeas corpus challenging his conviction on October 18, 2017. State Writ Application (WR-18,882-04), p. 43, ECF No. 14-1. It was denied without written order on November 22, 2017. Action Taken (WR-18,882-04), ECF 12-18.

Phillips makes two claims in his Petition filed on September 19, 2018. First, Phillips argues the prosecutor knowingly used and failed to correct the false testimony of Officer Coleman during the guilt/innocence phase of his trial. Specifically, he asserts Officer Coleman made inconsistent statements during Francis's trial about the identity of the driver of the orange Buick Regal:

> Q: Then you saw the driver of the vehicle?
> A: Just briefly, it was passing, and I was looking more at the car than the driver of the vehicle.

Mem. in Supp. 18-19, ECF No. 1. Second, Phillips claims the prosecution made improper comments during closing argument which infected it with unfairness. Specifically, he alleges the prosecutor misstated the facts concerning the source of the bullets recovered form Parham's body. Pet'r's Pet. 7, ECF No. 1. Phillips claims the prosecutor asserted he shot Parham in the back, while the forensic evidence indicated Phillips did not fire the bullet which entered Parham's back. Phillips asks the Court "to vacate the judgement and render an order that Phillips is actual [sic] innocent of the crime charged." *Id.*

Phillips recognizes his petition is untimely, but maintains he diligently pursued his constitutional rights and the delay was due to failure of the District Clerk to provide transcripts from his trial and Francis' trial for more than twenty-four years. *Id.*, at 9. Phillips argues the

District Clerk's delay in providing the transcripts made compliance with the statute of limitations impractical. Alternatively, Phillips argues new evidence—Officer Coleman's inconsistent testimony and the evidence concerning the bullets—establishes his actual innocence.

## APPLICABLE LAW

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides that claims under 28 U.S.C. § 2254 are subject to a one-year statute of limitations. 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of four different events: (1) when "the judgment became final," (2) when "the impediment to filing an application created by the State action in violation of the Constitution and laws of the United States is removed, if the applicant was prevented from filing by such State action," (3) when "the constitutional right asserted was initially recognized by the Supreme Court . . . and made retroactively applicable to cases on collateral review," or (4) when "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* §§ 2244(d)(1)(A)–(D).

The limitations period is tolled by statute when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2). "[A]n application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings . . . [including] the time limits upon its delivery." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (emphasis in original).

Additionally, the limitations period is not jurisdictional and is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). Equitable tolling is not, however, available for "'garden variety claims of excusable neglect.'" *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)). It is justified only "'in rare and exceptional circumstances.'" *Cousin v. Lensing*, 310 F.3d 843, 848

5

(5th Cir. 2002) (quoting *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998)). Such circumstances include situations where a petitioner is actively misled by the respondent, "'or is prevented in some extraordinary way from asserting his rights.'" *Id.* (quoting *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999)). Moreover, "'[e]quity is not intended for those who sleep on their rights.'" *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999) (quoting *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989)). Rather, "'[e]quitable tolling is appropriate where, despite all due diligence, a plaintiff is unable to discover essential information bearing on the existence of his claim.'" *Id.* at 715 n.14 (quoting *Pacheco v. Rice*, 966 F.2d 904, 906–07 (5th Cir. 1992)). Furthermore, a petitioner has the burden of proving his entitlement to equitable tolling. *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir.), *modified on reh'g*, 223 F.3d 797 (5th Cir. 2000). To satisfy his burden, he must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way'" of timely filing his § 2254 motion. *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

## ANALYSIS

### A. Statutory Limitations

In most cases, § 2254's limitations period begins to run when the judgment of conviction becomes final. 28 U.S.C. § 2244(d)(1)(A); *Clay v. United States*, 537 U.S. 522, 524 (2003). A judgment becomes final when the applicable period for seeking direct review expires. *Clay*, 537 U.S. 522 at 525; *United States v. Gamble*, 208 F.3d 536, 536–37 (5th Cir. 2000) (per curiam).

Here, Phillips' conviction became final on January 13, 1989, when the time for him to file a petition for discretionary review with the Texas Court of Criminal Appeals expired. *See* Tex. R. App. Proc. 68.2(a) ("The petition must be filed within 30 days after . . . the day the court

of appeals' judgment was rendered . . . ."). Hence, the federal limitations period would have expired one year later, on January 15, 1990. 28 U.S.C. § 2244(d)(1)(A).

However, the AEDPA did not become law until April 24, 1996. In cases where the limitation period expired before AEDPA's enactment, the courts will allow a petitioner a reasonable amount of time to file a federal habeas petition. *United States v. Flores*, 135 F.3d 1000, 1005 (5th Cir. 1998); *Flanagan v. Johnson*, 154 F.3d 196, 200 (5th Cir. 1998). The Fifth Circuit Court of Appeals determined a reasonable time is the one-year period from the date of the AEDPA's enactment. *Flores*, 135 F.3d at 1006; *Flanagan*, 154 F.3d at 200.

The Court deems Phillips' Petition filed on September 19, 2018, the day he signed the certificate of service and presumably placed it in the prison mail system. *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (citing *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998)). The Court accordingly finds Phillips clearly did not file his Petition within one year of the date of the AEDPA's enactment, and his Petition is untimely under § 2244(d)(1)(A).

Phillips maintains the District Clerk's Office prevented him from obtaining his transcripts and Francis' trial transcripts until 2012. Pet'r's Pet. 9, ECF No. 1. He claims he needed these transcripts to file his Petition because he based his first claim on Officer Coleman's inconsistent testimony. Thus, Phillips suggests that an unconstitutional "State action" impeded him from filing for federal habeas corpus relief. 28 U.S.C. § 2244(d)(1)(B).

"In order to invoke § 2244(d)(1)(B), the prisoner must show that: (1) he was prevented from filing a petition (2) by State action (3) in violation of the Constitution or federal law." *Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir. 2003). "[T]he plain language of the statute makes clear that whatever constitutes an impediment must prevent a prisoner from filing his petition." *Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002). Phillips offers no evidence of

7

the State preventing him from filing his petition; he only offers reasons for why he delayed filing his petition. His claim concerning the District Clerk is insufficient for him to invoke § 2244(d)(1)(B).

Additionally, in *United States v. MacCollom*, 426 U.S. 317 (1976), the Supreme Court addressed an indigent petitioner's right to a copy his trial transcripts. The Court held Congress may restrict expenditures of public funds to provide a transcript for 28 U.S.C. § 2255[2] movants. *Id.*, at 323. The Court reasoned this restriction on free transcripts did not violate the Due Process Clause of the Fifth Amendment, as collateral attacks on sentences usually arise from events occurring outside the courtroom or events occurring in the courtroom which the defendant experienced and does not need a transcript to recall. *Id.*, at 327–28. While a transcript might aid in supporting a claim, it will "rarely, if ever" illuminate a reason for collateral attack on a sentence. *Id.* Consequently, federal courts of appeal have held that the delay of obtaining a transcript is generally not an impediment for timely filing of a habeas petition. *Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006); *Randolph v. Taylor*, 69 F. App'x 824, 825 (9th Cir. 2003); *Donovan v. Maine*, 276 F.3d 87, 93 (1st Cir. 2002); *Miller v. Cason*, 49 F. App'x 495, 497 (6th Cir. 2002); *Lloyd v. Vannatta*, F.3d 630, 632–33 (7th Cir. 2002); *Crawford v. Costello*, 27 F. App'x 57, 59 (2d Cir. 2001); *Gassler v. Bruton*, 255 F.3d 492, 495 (8th Cir. 2001); *Jihad v. Hvass*, 267 F.3d 803, 806 (8th Cir. 2001).

Phillips' claims do not concern a constitutional right recognized by the Supreme Court within the last year and made retroactive to cases on collateral review. 28 U.S.C. § 2244(d)(1)(C). So, he cannot benefit from § 2244(d)(1)(C).

---

[2] 28 U.S.C § 2255 provides the process for a motion to vacate a sentence for federal prisoners while 28 U.S.C. § 2254 provides the process for a writ of *habeas corpus* for state prisoners. These sections mirror each other and establish similar processes for reviewing collateral attacks on sentences.

In addition, the date of the discovery of the factual predicate will not save Phillips' claims. *Id.*, § 2244(d)(1)(D). The AEDPA bars a claim made more than twelve months from the date "on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* Phillips alleges the Francis trial transcripts were completed by August 31, 1987, which was shortly after his own conviction on June 10, 1987. Pet'r's Reply 4, ECF No. 31. Thus, Phillips had twelve months, or until August 31, 1988, to discover the factual predicate for his claim. Furthermore, Phillips fails to explain the thirty-nine-month gap between the date he actually obtained the transcripts in December of 2012, and the date he filed his second habeas application in the 168th District Court in March of 2016. *Id.*, at 6. Phillips cannot rely on § 2244(d)(1)(D).

## B. Statutory Tolling

The limitations period is tolled by statute when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2). The statutory tolling provision contained in § 2244(d)(2) also apply to the grace period. *Fields v. Johnson*, 159 F.3d 914, 916 (5th Cir. 1998).

Phillips' first state habeas application "was dated April 29, 1988 and was disposed on August 31, 1988." Mandamus Supp., ECF No. 12-10. Thus, it preceded the AEDPA's enactment, and did not toll the limitations period. Phillips filed another state application for writ of habeas corpus challenging his conviction on October 18, 2017. State Writ Application (WR-18,882-04), p. 43, ECF No. 14-1. It was denied without written order on November 22, 2017. Action Taken (WR-18,882-04), ECF 12-18. It also did not toll the limitations period because Phillips filed it after the expiration of the statutory limitations period. *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) ("[S]tate habeas application did not toll the limitation period under §

2244(d)(2) because it was not filed until after the period of limitation had expired. Consequently, statutory tolling does not apply in this case. Phillips' Petition, filed on September 19, 2018, was over twenty-one years and four months too late.

### C. Equitable Tolling

Despite AEDPA's statute of limitations, the Supreme Court held in *Holland v. Florida*, 560 U.S. 631 (2010), that equitable tolling applied to § 2244(d). *Id.* at 649. But a petitioner is "'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Madden v. Thaler*, 521 Fed. App'x. 316, 322 (5th Cir. 2013) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). And equitable tolling principally applies when (1) one party actively misled the other; or (2) an extraordinary circumstance prevents a party from asserting their rights. *Id.* Equitable tolling is only available in "rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998).

Phillips first argues equitable tolling applies to the time period from his conviction to the date he obtained the transcripts of the trials. Pet'r's Reply 7, ECF No. 31. He contends the 168th District Clerk's Office obstructed his diligent pursuit of his trial transcripts for twenty-four years by ordering them unavailable and consistently refusing to answer his letters inquiring about their availability. *Id.* He claims his lawyer first filed a motion to request a copy of his trial transcript on or about August 1, 1988, but the motion was denied. *Id.*

Next, Phillips insists he wrote letters to the 168th District Clerk's Office requesting the cost of his trial transcript, but these went unanswered for years. *Id.* Petitioner says he then enlisted the assistance of his mother, aunt, and an attorney to acquire the transcripts. *Id.* Once

he obtained his trial transcripts in late 2012, he requested and obtained Francis's trial transcripts on or about December 14, 2012. *Id.*, at 5, 7.

Even if Phillips established an entitlement to equitable tolling until December 14, 2012, he failed to establish equitable tolling for the subsequent thirty-nine months. To overcome the statute of limitations, he must demonstrate an entitlement to equitable tolling for the period covering the date he obtained the transcripts until the date he filed his Petition. However, Phillips fails to do so. Thus, he fails to establish an entitlement to equitable tolling for this time period as he provides no reason for the delay. Phillips' Petition is limitations-barred, and he is not entitled to equitable tolling.

### D. Actual Innocence

Phillips argues that his actual innocence allows the court to adjudicate his claims based upon the merits. *Id.* at 8. He contends the new evidence establishes his innocence which negates any statute of limitations or lack of equitable tolling.

A claim of innocence may allow a habeas petitioner to have his otherwise time-barred constitutional claim adjudicated on the merits. *Herrera v. Collins*, 506 U.S. 390, 404 (1993). A court should permit a petitioner to argue the merits of a claim if the evidence causes the court to have a lack confidence in the outcome of the trial. *Schlup v. Delo*, 513 U.S. 298, 316 (1995).

To establish a credible claim of actual innocence, a petitioner must provide support not previously presented at trial for his allegations through either eyewitness testimony, scientific evidence, or physical evidence. *Id.* at 324. The new evidence must "persuade[] the district court that, in light of the new evidence, no juror, acting reasonably would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329. Critically, a petitioner must establish his factual innocence and not simply that the evidence was legally insufficient. *Sawyer v. Whitley*, 505 U.S.

11

333, 339 (1992). Factual innocence means establishing the petitioner did not in fact commit the crime. *See id.*, at 340 ("A prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime."). The petitioner must establish any new evidence would more likely than not cause a juror to have a reasonable doubt about his guilt. *Id.*, at 346; *Schlup*, 513 U.S. at 327.

Phillips presents two separate claims which he maintains establish his actual innocence: (1) the inconsistent testimony of Officer Coleman, and (2) evidence about the bullets recovered from Parham's body.

Phillips' first claim stems from Officer Coleman's testimony. At Francis's trial, held before Philips' trial, Officer Coleman testified he "briefly" saw the driver, stating "it was passing and I was looking more at the car than the driver of the vehicle." Pet'r's Mem. in Supp. 13, ECF No. 2.*Id.* at 13. At Phillips' trial, Officer Coleman testified that he recognized the driver of the orange Buick Regal because the "window of the patrol car was rolled down at the time" and that he "made eye contact with the driver." *Id.*, at 12–13. He then identified Phillips in the courtroom as the individual he had observed driving the orange Buick Regal. Phillips argues the discrepancy between the testimony at each trial established grounds to impeach Officer Coleman. *Id.* Thus, he insists, he could have caused the jury to doubt Officer Coleman's credibility. *Id.*

Demonstrating the ability to impeach a witness with prior inconsistent statements is not new reliable evidence. "'[N]ew reliable evidence' [is] 'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Fratta v. Davis*, 889 F.3d 225 (5th Cir. 2018) (quoting *Schlup*, 513 U.S. at 324). Simply put, the potential impeachment of Officer Coleman is not new reliable evidence as it is neither new scientific evidence, a new

eyewitness account, nor new physical evidence. Moreover, even if Phillips had successfully impeached Officer Coleman, the other evidence of his guilt was overwhelming.

Phillips' second claim arises from testimony about the source of the bullets retrieved from Parham's body. Pet'r's Mem. in Supp. 15–16, ECF No. 2. Phillips contends the testimony at Francis' trial conflicted with the testimony at his trial. He argues this evidence demonstrates a twisting of the facts by the prosecutor, which misled the jury into thinking he shot Parham in the back. *Id.* at 16.

Like the claim about Officer Coleman's testimony, this is not new evidence. It merely suggests the witness could have been impeached about the source and location of the bullets retrieved from Parham's body. This impeachment evidence fails to establish Phillips' actual innocence, as it is neither new scientific evidence, a new eyewitness account, nor new physical evidence. And again, the evidence of Phillips' guilt was overwhelming.

Phillips' claims only attack the sufficiency of the testimony about identifying him in the vehicle and the location of the bullets by raising the possibility of impeaching the witnesses. When viewed in light of the entire record, neither of these claims establish Phillips did not in fact commit the crime or cause the court to question whether a reasonable juror would find him guilty. Thus, the discrepancies fail to establish Phillips' actual innocence, which would allow him to overcome the AEDPA's statute of limitations and permit the Court to adjudicate his claims on their merits.

## EVIDENTIARY HEARING

Phillips requests an evidentiary hearing to further develop the record in support of his claims. A federal court's review of claims "is limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011). A court may hold an evidentiary hearing only when the petitioner shows that (1) a

claim relies on a new, retroactive rule of constitutional law that was previously unavailable, (2) a claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, or (3) the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable juror would have convicted the petitioner. 28 U.S.C. § 2254(e)(2).

Here, Phillips' claims are time barred and he is not entitled to equitable tolling. He does not rely on a new rule of constitutional law or new evidence. He could have timely discovered the factual basis for his claims through the exercise of due diligence. The evidence of his guilt is overwhelming. Therefore, he is not entitled to an evidentiary hearing.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Gonzalez v. Thaler*, 132 S. Ct. 641, 646 (2012). In cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, Phillips has not made a substantial showing of the denial of a constitutional right. His claims are time-barred and he is not entitled to equitable tolling. Thus, reasonable jurists could not debate the denial of Phillips' § 2254 petition or find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Therefore, the Court shall not issue a certificate of appealability.

## CONCLUSIONS AND ORDERS

The Court concludes that Phillips' Petition is time barred and his is not entitled to equitable tolling. The Court further concludes that Phillips is not entitled to a certificate of appealability. The Court, therefore, enters the following orders:

**IT IS ORDERED** that Petitioner Kimberly Phillips' motion for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Kimberly Phillips' "Petition for a Writ of Habeas Corpus by a Person in State Custody" under 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED.**

**IT IS FURTHER ORDERED** that all pending motions are **DENIED**.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

SIGNED this 6 day of September 2019.

_____
**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**